We will be conducting by Zoom, and I'll give the parties in the prior case a chance to gather their belongings. Of course, can you hear me? This is Alice Guan. I have unmuted myself. Ms. Guan, hold on one second. We're getting set up here. I'll call the case in a second. Okay. I also have housekeeping. It's very important for me to let the court know. Ms. Guan, hold on one second. We're going to get started in a second. We're not set up here. I'll let you know. I'll call the case when we're ready. Okay. I'm waiting here. Thank you. The power to my house went out, so I don't have a file on the Internet. So I'm working with my phone. Okay. Thank you. Thank you. We'll get to that in just a second. Some battery-powered. Ms. Guan, hold on one second, please. We're getting set up here. I'll call the case, and then we can deal with all of those issues. Yeah, yeah. I just want to let you know, I don't know how long my battery-powered light lamps can work. It may be limited. Thank you. Okay. Hold on one second. Miss Taylor, if you wouldn't mind starting your video. Thank you. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.  Is it still there? I don't see the cord anymore. Hold on, Ms. Guan. We're still getting set up. We're switching over to Zoom. Hold on one second. Okay. Okay. Okay. Our fourth and final case of the day is Alice Guan versus Ellingsworth Residential Community Association, Inc. Case numbers 21-12969, 21-12971, and 21-13231. Ms. Guan, you may proceed. You have reserved five minutes for rebuttal, and so you may begin your argument. May I make a housekeeping announcement, Your Honor? It's extremely important. Okay. Before I start my ten minutes. Okay. Thank you for allowing me. I have a professionally diagnosed PTSD, which is protected by the American Disability Act regarding accommodations in any environment. The signature symptom for me is the severely decreased ability to keep attention or concentration or focus on these appeal cases. So please let me finish my ten minutes opening of oral argument without interruption so I can complete it. After I complete it, if you have questions, ask me questions if you like, and I will do my best to answer the questions. Ms. Guan, Ms. Guan, Ms. Guan, let me interrupt you. You have ten minutes. This is oral argument. If we have questions, we will ask them. They will happen during the ten minutes, so you may proceed. And your ten minutes is starting now. Number one. Your ten minutes has started. That governs subchapter five plan confirmation after these judges deemed the debtor is a subchapter five debtor. Allowing Mouton's topic to be debated here displays that this court's mind that this court thinks the lower court evading those three federal codes might not need to be reviewed and corrected by this court. And that is wrong. Number three. These two judges evading the specific three federal codes has eroded the integrity of the federal bankruptcy program. This includes, but not limited to, confirming a plan that is based on the AD homeowner's willingness to pay debt, not based on their ability to pay debt. The confirmation orders turned the federal program into a charitable event. Therefore, this court must reverse orders that confirmed the reorganization plan. Now, number four. Debtors stated, actually, in their brief, that the AD homeowners feared a burden to pay debtors' debt, and their willingness to pay debt through their voting process for a special assessment formed the basis for the currently confirmed plan. Debtors also stated that the sales of AD homes that each valued between half a million dollars to one million dollars and the equities in those homes are also linked to the finances of this debtor. But basically debtors admitted to this court that those AD homes and their owners' financials should be part of the debtors' bankruptcy estate. This court must know that this debtor, so far, have not disclosed any financial information associated with any of those AD houses, or the owners, or associated with any of their commonly shared land or equipment. Number five. Debtors improperly proposed their plan, first with zero special assessment, then with a special assessment of only $767 per month per house, because that was the maximum those owners are willing to give to pay their debts. Then the judges improperly confirmed the plan without applying the three federal codes. Reversing this improperly confirmed, improperly proposed plan absolutely has no impact on any house sales, or the finances of those AD homeowners, or on the debtor finance, because none of these, so far, are linked to the confirmed plan. None. Number six. Therefore, this court must reverse the plan confirmation order, and when the new properly plan is confirmed, including all these missed assets, then reviewing that or unwinding that may have consequences on the element that debtor right now claims. No one knows what these homeowners' maximum ability to pay is, but in the past, they easily voted $178 per month to pay Carlos Arias to continue a four-year-long lawsuit against me, and forced me to spend more than $10,000 a month to defend myself. Number seven. Record shows that debtor has obtained $300,000 collected from legal malpractice settlement from Carlos Arias, who sued me in state court. They have started a $67 per month per house contribution to the estate. But so far, debtor has violated the confirmed plan by not making any payment to me, not a dime so far, when my claim is more than 90% of the total claim. Basically, debtor has defaulted on the plan. Therefore, that confirmed plan should be totally scratched, because this debtor even did not apply to the plan that is confirmed. Number eight. After judge denied the motion to object subchapter five, I appealed, and I filed a motion to stay. Those are in the bankruptcy document 184, 205, 142, 156, 154, 172, 177, 244, 210, 189, 311, 127, 134, and the discourse document 41-4, page 25, and the 43-2, page 29. And after the plan was confirmed, I also filed a motion to stay confirmation order, and that motion was filed before the debtor informed the court that 88 homeowners decided that they are willing to give $300,000 over five years to pay debt. Please see document 425, 431, 432, 433, 604, 606, and this court's document. Based on those two judges' behavior throughout the cases, it would be impossible to obtain a stay, no matter what I file. Number nine. Since the time the debtor proposed its first plan through the confirmation hearing and beyond, I have objected to the plan by filing motions and objections and by voicing my objections in hearing. And those are documented in document 147, 149, 176, at the adversary case 55, which document 8, 16, and case 74 in document 1. Now, number 10. This confirmed plan does not involve sales of properties or transfer of stocks or restructuring loans or anything like that. Nothing happened. Until one or six months after the plan confirmation, the 80 owners start to make their $2.25 per day contribution into the estate. Eight states later paid Justin Luna's law firm. That's it. The $2.25 per day contribution, the legal fee payment, they will be part of the future newly properly confirmed plan after this court reverses the current improperly confirmed order, the plan. Nothing has been done. Nothing that has been done so far needs to be unwinded. Number 11, 80 homeowners bear the burden to pay debts. They are not third parties or non-adversary third parties. They are not innocent third parties. Once this court reverses, a properly confirmed plan will ensure debtor still is a revitalized entity with its resources needed because Chapter 11 program is designed to allow debtor to continue as a revitalized entity to fulfill its function. Well, maximize the debt payment over several years in a way such that the properly confirmed Chapter 11 plan can generate more debt payment than total liquidation is able to do. Number 13, as stated in my brief, sub-Chapter 5 plan confirmation order should be reversed because this debtor is not qualified to be a sub-Chapter 5 debtor. Order denying a motion to abstain is a final order ripe for appeal and automatic stay should be lifted. Therefore, order denying my motion to lift automatic stay should be reversed. Number 14, I do object this court only gave me 15 minutes total for all three cases. I hereby fully adopt and incorporate all of my six briefs from the three appeal cases into this oral argument without repeating them here. 15 minutes is just not enough time. I also object to Andrew Layden or the court appointed counsel to represent my position. Also, this debtor's debt burden is paid by individuals, the AD homeowners. The debtor or homeowners do not engage in commercial or business activities here. Debtor cited laws involving corporations, but those corporations' debt burden was not paid by individuals like this debtor does. Also, this position of the motion to abstain determined whether the exact amount of my claims can go outside of bankruptcy court to be determined, and it affected the manner in which such adversary claims were adjudicated in front of Article 1 judge or Article 3 judge, with or without jury, which is a constitutional right issue. Therefore, motion to abstain in this case, just like the motion to lift automatic stay in written case, has raised important issues that necessitate an immediate to appeal. Debtor cited laws that are not appropriate and are not applicable to these three appeal cases. For example, in the Cori law, that debtor is a financing company, its plan met all the standards and the codes. The court verified all that. That debtor is a tenant. Creditor is a landlord. Creditor did not seek stay confirmation order. Debtor already distributed its stocks to the creditors. In a harbor case, plaintiff are all lot owners located within the Heatherhue estate. They filed a complaint to object to confirm the plan that puts new confidentiality restrictions on them. Ms. Guan, Ms. Guan, your time has expired. You have reserved five minutes for rebuttal. Thank you. Mr. Layden. Morning, Your Honor. May it please the court. My name is Andrew Layden, and I'm the pro bono amicus curiae counsel appointed by the court to address three issues that were identified in the order. The first of those issues was whether these appeals are equitably moved. The second issue was whether the district court erred in finding that a bankruptcy court's order denying abstention was a final order that was immediately appealable. And the third issue was whether the bankruptcy court and district court erred by finding that the debtor was eligible under Chapter 11, Subchapter 5 of the Bankruptcy Code. Mr. Layden, she failed to get a stay and distributions under the plan have begun. Let me ask a quick question. I know that as of April of 2023, it looked like 64,000 roughly had been made in distributions. But I do note that Ellingsworth filed a notice of substantial consummation in June of 2023. How much has been distributed to date? Your Honor, I believe it's around, it's not much more than that $68,000. It's very close. The most recent operating report showed $299,000 of cash on hand. And I believe all I have is that all the distributions appear to be to the debtor's law firm. Okay, so she failed to get a stay and we have this notice of substantial consummation filed in June of 2023. So why does equitable mootness not apply? Your Honor, equitable mootness is a balancing of the equities and whether the court can grant effective relief. And the court can here. The record's a little inconsistent on if substantial consummation happened. If so, when it did, the debtor's original briefs in late 2021 and early 2022 argued the plan was substantially consummated at that time. Then the notice of substantial consummation that was filed in June 2023 relates back to the plan confirmed back in 2020. It says that it was substantially consummated in June of 2023 under the bankruptcy rules that has to be filed within 14 days of substantial consummation. So it's a little unclear there when the plan was, the debtor's view is that it was substantially consummated. But the plan here is really very straightforward and very simple and very few things have happened since the plan was confirmed. The plan classified creditors into two categories or claims in two categories. Unsecured creditors of which Ms. Guan was more than 90% of the unsecured creditors of the debtor and equity of the nonprofit, which was unaffected. So there's only two classes of claims in the whole plan. The only people affected by the plan, Your Honor, essentially are the general unsecured creditors, which again is more than 90% Ms. Ms. Guan's claim arising from the HOA improperly suing her in violation of the arbitration agreement. And the only payments since that plan is confirmed back in 2020, Your Honor, appears to be payments to the debtor's own law firm and day to day operating expenses. And cash on hand has grown from around $50,000 when the case was filed to around $300,000 today. So if you look at, for example, Judge the Nika Holdings case where the court declined to apply equitable mootness in that case, it's actually very similar. And Nika, Your Honor, the transactions that were at issue were being held in trust. The money was being held in escrow. And it's similar here because the only dollars going out are to the debtor's attorneys on a county administrative expense plans. The second issue, Your Honor, the order, the abstention order, our view there is this is a written issue. If you look at the written case, the written dealt with emotion with excuse me, with an order denying a motion for relief from stay. But it's really factually very similar and functionally equivalent to this case. Under written, there was a free bankruptcy lawsuit by the creditor against the debtor that ultimately filed bankruptcy. That lawsuit was stayed by the bankruptcy. The creditor sought sought to have the lawsuit continue in the venue where it was filed. And can you hear me? What's the statute in which the abstention was sought? I believe it was 1334, Your Honor. Yeah, it's 1344 C2 is the mandatory one, right? Yes, Your Honor. All right. And can you read that statute to me? Do you have in front of you? I do not, Your Honor. It seems to suggest that I have it over here. What it says is this, and I know we're running out of time. I just want to ask this before we were finished. It says upon timely motion of a party in a proceeding based on a state law claim or a state law cause of action related to a case under Title 11, but not arising under that. With respect to which an action could have been consummate commenced in a court of the United States absent jurisdiction under the section. The district court shall abstain from hearing such proceeding. If the action is commenced, can be timely adjudicated in a forum of appropriate jurisdiction, right? Yes, Your Honor. The part I want to ask you about is that first part upon timely motion of a party in a proceeding. Doesn't this contemplate that the motion is going to be filed in a proceeding itself? The. I want to make sure I'm understanding your question, Your Honor. As I understand it, Miss Kwan's motion was filed in a bankruptcy proceeding, right? Right. So but what I'm saying is, in other words, this is a discrete thing inside of a proceeding. Not it doesn't seem to define it as itself a proceeding, which was very different than the court proceeding that was defined in the issue in Ritzen. In other words, textually, it seems that this is not a proceeding itself, but filed within a proceeding, which was different than in Ritzen, where it defined a court proceeding as the very thing that was under appeal. The denial of the stay, right? That's an interesting distinction, Your Honor, and not one that that I addressed in the brief. But functionally, I think, especially in this case, in a context, the effect of the order that is being appealed is that that pre-bankruptcy lawsuit that was pending when the bankruptcy case that was stayed when the bankruptcy was filed. And the request was for that claim to be adjudicated, not in the bankruptcy court, but in the underlying state court. And the relief granted in that order or denied in that order was just not related to the substance, the amount of the claim, but to where and how it would be adjudicated. That and the issue in Ritzen, in our view, are functionally equivalent. I don't have any other questions. I just want to thank you very much, Mr. Layden, for agreeing to serve as amici in this case and for really helping us out and make some sense of these issues. Thank you so much. Thank you for the opportunity. And thank you. Ms. Taylor, you have 20 minutes. Thank you, Your Honor. On behalf of the appellee, who is also the debtor in the bankruptcy case below, Ellingsworth Residential Community Association, given the number of issues that are here, I'd like to start where the court has just left off on Ritzen and the issue of abstention. Ritzen did not deal with a motion to abstain. It was a motion for relief from stay. And while that motion for relief from stay was to have relief to go back to the state court proceedings, the difference between motions for relief from stay and motions for abstention was important to the court's reasoning. In the case, the reasoning that's given about why motions for relief from stay are different is because it adjudicates the ability not just to go pursue the claim someplace else, but also potentially to take control of the debtor's property. A motion for relief from stay can be filed, for example, in order to take possession of collateral, to enforce a lien, to terminate a lease. And because of that, a motion for relief to stay, in many cases, is going to implicate something much more than the forum of the dispute. And when rejected the argument that this was simply just a motion to determine the forum, what the court said was, in addition to articulating the fact that a motion for relief from stay is often much more than that, the court said that motions and orders that are the same type should be appealable in the same manner, meaning all motions for relief from stay should be appealable or not, and not parketed in between whether it is a forum adjudication or possession of collateral. Counsel, is it relevant that a motion to stay can be filed before or independent of an adversarial proceeding, whereas abstention is always going to be filed in the context of an adversarial proceeding? I don't believe so, Your Honor, because the abstention, when we look at mandatory abstention versus voluntary abstention, it all depends on what exactly is being sought. A motion for relief from stay, yes, that can be absent, it can just be in the bankruptcy proceeding, but in the motion to abstain, we're looking at what is the relief that is being sought, and is there effective judicial review available? In the case of an order denying a motion to abstain, the bankruptcy court keeps the case, and therefore effective appellate review is available upon completion of the adjudication of that claim, which actually is exactly what happened here, because following the confirmation of the plan in accordance with the scheduled trial, the claims actually were adjudicated at trial, and the adjudication of those claims is pending appeal before this court now. So there isn't a situation where there's going to be not an opportunity to have effective appellate relief. So given that we believe that the abstention order is a non-final order, and while the district court may have had discretionary jurisdiction in order to review that, which it chose not to review, this court, as the second court reviewing the case, would not have that discretion, and so we believe that it's proper to dismiss that case on those grounds alone. Getting into the heart of the plan and the major complaints that Ms. Guan raises, there's two major themes that play out through all of the briefs. One is her desire to not have the bankruptcy court adjudicate the claims, and two, her belief that the individual homeowners who are members of the homeowners association somehow are individually liable for the debt of the association, and therefore have to disclose, pledge, or involve their personal assets and their personal information in order for the bankruptcy court to confirm the debtor's bankruptcy case. And that simply is not the case. There has been no law, no argument, nothing suggesting why that would be the case, and as the bankruptcy court noted in the order overruling Ms. Guan's objections to the confirmation of the plan, the bankruptcy court likened this to a corporation and its shareholders, the logic being that if a corporation was filing for bankruptcy in order to confirm its plan, all of the shareholders of that corporation would be required to disclose their assets, to be personally liable, to have liens on their property, which eviscerates the distinction between individuals and corporations, and there's no authority to do so. So the fact that there were other homeowners who have homes, their property just simply is irrelevant, and the bankruptcy court correctly determined that the disclosure of that information was not required in order for the court to evaluate and confirm the plan following the confirmation trial. With respect to the court's jurisdiction, to hear her claims, what Ms. Guan does not appreciate is the fact that when she filed her prusive claim in the bankruptcy case, that gave the court the jurisdiction to adjudicate those claims. The case law is clear that upon that, it converts whatever cause of action it was into a claim adjudication that the bankruptcy court then has the jurisdiction to determine, and the reason being that in bankruptcy, when there are claims and when there's claim disputes, it impacts all of the creditors in the bankruptcy case, and so it's a core proceeding as a proceeding to adjudicate claims and claims objections. The fact that she has requested a jury trial for some of her claims makes no difference because by filing the prusive claim, by consenting to the jurisdiction of the court, it waived the right to a jury trial because the claims then become claims in the bankruptcy case for which there is no right to a jury trial. Ms. Guan fails to identify any finding of fact that the bankruptcy court made that could be considered clearly erroneous. The court clearly considered all of her contentions and her objections to having the claim heard in the bankruptcy case versus the pre-petition state court action, including her claims about the judicial economy of having the complaint heard in the state court case, and there's nothing in the court's findings in the weighing of the evidence in considering the economies and the equities to suggest that there was any clear error made by the bankruptcy court that would warrant a reversal of the order denying the motion for relief for stay, and in the event that the motion to abstain, the order resulting from that is a final order, it was argued on the same grounds as the motion for relief from stay and should be affirmed on the same grounds that Ms. Guan had failed to establish any basis for reversal of the factual findings made by the bankruptcy court. Simply, she is displeased with the bankruptcy court's actions, she's displeased with the debtor filing for bankruptcy and what the implications of that are, but the bankruptcy code provides clear procedures, it provides clear requirements of what must be done, and there has been nothing identified that is a violation or deficiency in any of the statutory requirements, either in the contents of the plan, the confirmation and approval of the plan, or otherwise. With respect to the Subchapter 5 argument, Subchapter 5 and all of the cases that have reviewed it so far, and there is a growing body of case law now discussing Subchapter 5, you know, pretty much uniformly hold, and I'm not aware of a case to the contrary, which is why I say pretty much uniformly, that the term commercial or business activities is a very broad term, and it can encompass a wide variety of activities, and that the only limitation that has been placed on there in terms of activities is a debtor who holds simply single asset real estate, which this obviously is not a case of that. And the courts then, when looking at this language, Congress's decision to not include any other restrictions beyond the statutory debt limit, the 50%, no restriction on the types of activities and the type of debtor who can do it. And what that means is two important things that are applied in this case. One, the fact that debtor is a not-for-profit corporation has no bearing on its ability to proceed under Subchapter 5. The statute on its face neither excludes not-for-profit organizations, nor requires any type of profit motive. And in fact, not-for-profit organizations are able to file for Chapter 11 bankruptcy, just like any other corporate debtor can. And moreover, the statute does not require any kind of profit motive or profit-seeking motive. Had Congress wanted to, then it could have included the language profit-seeking or profit motivation, but it didn't. And in other parts of the code where it's talking about devoting income to the plan, again, profit isn't included its income. There's nothing in either the text of the statutory definition of a small business debtor or the overall Subchapter 5 provisions of the code that require something different from what the debtor here offers. The cases that came out early on in Subchapter 5 that were discussing profit motive or intentions or linking were individual debtor bankruptcy cases. Chapter 11 allows individual debtors to file. Individual debtors can file under Subchapter 5, provided they can meet the statutory requirements. And what the cases explain is when you have an individual who is relying on actions or activities of a business, there's a step removed between them. And so some nexus may be required in order to bridge the gap between those. In courts, however, have not required very much even to constitute the nexus in the event of an individual bankruptcy filing. For example, owning a consulting business and continuing to consult in that business was considered commercial or business activities for purposes of the statute. Winding down activities of a former business is considered engaging in commercial or business activities within the statute. And given that it's broadly interpreted, even for individuals, it's plainly broadly interpreted in terms of corporations as well, which we see from cases like NetJets Aviation versus NRA RS Air, where the court, in looking at a bankruptcy of a corporate debtor, specifically held that a profit motive is not required. And the activities there included engaging in litigation, paying for aircraft registry fees, maintaining its corporate status, and filing tax returns. The court held that those activities were all commercial or business activities, notwithstanding the fact that the business currently was not operating and did not have a profit-seeking motive at that time. Similarly, NRA Vertical MAC Construction LLC, which is a 2021 case from the Bank of Mississippi Corridor Middle District of Florida, held that even though the debtor had ceased operating its business pre-petition, it was still engaged in commercial or business activities sufficient to qualify under Subchapter 5, where it maintained bank accounts. It worked with insurance adjusters and insurance agents to resolve pre-petition construction claims and was engaged in efforts to sell its assets. Those are instances of corporate entities who were essentially non-operating, not continuing business at the time of filing the petition. What we have in this case is the debtor is an ongoing operating entity, and it runs the Homeowners Association. And as part of that, it does things like hold member meetings, hold board of director meetings. It collects assessments. It hires professionals to maintain the common areas, all plainly activities that are well within the broad construction of a commercial or business activity that has been read for Subchapter 5. Mr. Layden, in his brief, had made a comment about the debt and that because litigation was not the primary activity of the Homeowners Association, there's an issue of whether 50% or more of the debtor's debts arise from the business or commercial operations of the debtor. However, because this is a corporation, all of the debts of the corporation are business debts. This isn't a situation like you find with an individual debtor where it's possible the debt could be business purposes on one hand or personal family consumer purposes on the other hand. Because it's a corporation, it's all business debts. And cases, as the ones I've cited before, have held that litigation, pre-petition and continuing the litigation, does constitute corporate commercial or business activities. And litigating with a homeowner is very well, very easily fits in with what types of activities a Homeowners Association does. And so, given the broad interpretation of the statute, the very plain and simple commercial activities that the debtor operates, there's no dispute here that the amount of debt falls below the statutory threshold. The debtor qualifies to proceed under Subchapter 5 and there's no basis for unwinding the plan because of that. Simply, if Congress had wanted further exclusions, it could have done it. It didn't. The whole purpose of the Small Debtor Act was to make it simpler for different and smaller types of debtors to confirm and complete a Chapter 11 plan. And there's nothing that would exclude this particular small debtor from being able to take advantage of the opportunities that Congress has set up. On the equitable mootness grounds, which is our alternative ground for dismissal of all of the appeals, the equitable mootness doctrine is designed to strike the balance between the finality of confirmed plans and an appellate's right to have appellate review of claims. All of the factors here, we believe, weigh in favor of equitable mootness. Ms. Taylor, how do you get around the fact that there's still a lot of money left to be distributed and it looks like the only distributions have been made are to counsel and some administrative distributions. How would any of the proposal of Ms. Juan, how would that knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the bankruptcy court? In terms of what makes it unmanageable, the centerpiece of the plan and the additional payments on the plan that make it feasible is the $300,000 special assessment that the homeowners were required to approve in order for the plan to move forward as set forth in the confirmation order. In which they did, in fact, approve in order to fund the plan and allow the completion of the payment in accordance with the terms of the plan. If the confirmed plan will reverse at this point, that's the key transaction here. And it doesn't matter that it isn't a particularly complex transaction. The 11th Circuit in 2021 and LG LLC versus Horizon Hospital Group rejected an argument that equitable mootness applies only in cases of complex corporate bankruptcies. And noted that the doctrine can apply even in a Chapter 13 individual bankruptcy case, depending on the factors. Here, the efforts that went into getting the approval of the special assessment with the understanding of putting an end to the litigation, having completion, having to unwind that, that is knocking the props under the plan. And the distributions, in order to be substantially consummated, there's not a set level of distributions that needs to be made. So the fact that administrative distributions have started under the plan is sufficient for purposes of the substantial consummation of the plan. Ms. Guan had mentioned about the filing a motion for relief from, excuse me, a motion for stay pending appeal. And I went back to check what the procedural history was that the confirmation order was entered on October 16, 2020. Ms. Guan filed her appeal. It was docketed in the district court October 20, 2020. The case was fully briefed by January 24, 2021. And it wasn't until February 2nd, over three months after the confirmation order, after the appeals had been well underway, that Ms. Guan filed a motion to stay pending appeals. And it was actually part of a motion seeking a stay pending resolution of a claim objection for a different creditor. And then simply said, oh, there's also five other appeals, and it should be a stay pending those appeals with no analysis, no discussion, nothing. And so the bankruptcy court felt that Ms. Guan failed to show any cause for delaying implementation of the plan. And so while a stay was arguably sought, it wasn't timely sought in a manner that would prevent from what happened here, is the debtor moving forward with the consummation of the plan with obtaining the share, the homeowner approval, which, again, that's the key part of the plan. And in the cases cited in our response to Mr. Layden's brief, when there's one key transaction that was necessary to fund the plan, the fact that that would have to be undone, even if it's not particularly complex, is sufficient to show that equitable mootness should apply and that the confirmed plan and value in having the confirmed plan stands outweighs the interest of the effective appellate review. And what we have here also is that Ms. Guan's claims filed in the bankruptcy case have been fully adjudicated, and there's nothing further for the court to do in that regard as well. Can you just quickly tell me what you mean by, I know the $300,000 special assessment, how would it have to be undone? Ms. Guan's position is that more money should be assessed. So how would that undo the current special assessment? So the current special assessment was voted upon and approval sought based on the, I see my time has expired if I may finish answering the question. Based on what was contained in that plan and the time period for that plan for having payments done and then being able, what amount of money would be devoted from the generation of other assessments to allow the debtor to get back on track, to be able to continue normal operations, to build reserves, to do the other things that need to be done in the homeowners association besides litigating. If the case were dragged out further, if this was going to be tried a second time and another run of appeals, there's no certainty that the homeowners would in fact agree to any assessment again to fund the plan. It's not just a 300 plus whatever. There's nothing that requires them to even reaffirm that 300 plus some other amount. And so that's what takes away the integrity of the plan as a whole. Thank you, Ms. Taylor. Thank you. Ms. Guan, you have five minutes on rebuttal. Yes, my phone, I'm operating on my cell phone because I still don't have power in my room. So I'm plugging my phone to my portable, portable power battery. Luckily I have this so I can still have a light on. So I'm plugging it onto this thing. Just give me a second so my Zoom doesn't go out. Hold on, make sure. I think it's connected. Thank you. I'm ready. Thank you. Can I start now? If you're starting, please proceed. Hello? Okay, I'll start now. I'm seeking increased special assessment. And so that would be more than $300,000. So currently approved, whatever their willingness to pay, 300K will be part of the future. Properly proposed and properly confirmed the plan. So basically, we haven't assessed, the court hasn't assessed the maximum ability of those 80 homeowners to pay. And so right now they're paying $2.25 per day, which is money to buy donuts. So I'm asking increasing that. If that is increased, say to $10 a day, that is not going to affect how they fund the basic operation of the organization. Because whatever they pay now is peanuts. Even if you triple or quadruple that, it's still peanuts. So Christine's argument is incorrect. Also, the fact and the laws that I have used are all contained in my brief. So if you read the brief, you'll have all of them. Go back to the Hartford case. Debtor there had essentially liquidated and no longer conducted business or holds any assets. Long after the appeal of confirmation order has passed, some third-party entities purchased the debtor's asset in accordance with and in reliance on the plan. Many months after that, that plaintiff filed the complaint. So the court says at this stage, the bail cannot be on run. But this current case here is not a direct appeal. I mean, that case there is not a direct appeal of confirmation order. Also for the NLD LLC, NLD raised no objection to the entry of the confirmation order, nor did it seek any stay. So Debtor Hazen began making payment under the plan already. The court did not rule based on if the case is complex at all. For 2-2 case, the asset evaluation was accurate and the debtor paid debt, rejected the leasing obligation, eliminated all the liens, dissolved the prior business entities, incurred $126 million new loan, redistributed the stock, distributed $108 million cash to creditors. And some stock was sold to third parties who were not before the court. So those are the third parties are not part of the debtor and did not bear the burden to pay any debt, like in this case. In several LLC, like In-Rate Vertical and so on and so forth, including also In-Rate Abundance Life, all these entities either were set up to generate a profit or they have carried out activity to make money or generate a profit. Their litigation is to recover loss through contracts that involve business activities to generate profit, for example, account receivable payment, recover loss from contracting agreements. And some of the case laws that are cited and the activities are involved with your prior activity, which are profit-driven. And by the way, written case laws actually apply to our case. Now, there is a difference between determining amount of debtor owes. And, well, there's something very important to say. By the way, during the whole time of the state lawsuit, debtor knew that was improper lawsuit. And they knew Carlos Arias was committing legal malpractice, but they did not do anything. And that lawsuit, as well as the debtor filed the bankruptcy case, is to protect Meritage Homes. It is to avoid paying me. And based on this and based on other facts and the laws I have cited in my appeal of order denying my motion to lift automatic stay, grant and warrant the automatic stay to be lifted. And similarly, grant. Ms. Guan, Ms. Guan, Ms. Guan, Ms. Guan, Ms. Guan, Ms. Guan, your time has expired. Thanks to all of you for appearing today. And Mr. Layden, let me reemphasize Judge Luck and say thank you for appearing in this case. We have the case under advisement and court is in recess until tomorrow morning. Thank you.